

# BORRELLI & ASSOCIATES
## P.L.L.C.

www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

**PERSONAL AND CONFIDENTIAL**

November 20, 2014

*Via Personal Service*
Sunny Joseph Barkats, Esq.
JSBARKATS PLLC
18 East 41st Street, 14th Floor
New York, New York 10017

Re:   *Denisse Villalta*

Dear Mr. Barkats:

The above referenced individual has retained this office in connection with her claims against JSBARKATS PLLC ("Firm"), and you individually, for egregious and appalling: (i) *quid pro quo* and hostile work environment sexual harassment and retaliation in horrid violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and Title 8, Chapter 1 of the New York City Administrative Code, also known as the New York City Human Rights Law ("NYCHRL"); (ii) gender motivated violence in violation of Title 8 Chapter 9 of the NYCHRL; and (iii) common law assault and battery. Ms. Villalta sets forth her allegations as follows:

As you know, on October 29, 2014, you hired Ms. Villalta to work at the Firm. When she arrived for her interview on that same day, Ms. Villalta undoubtedly should have heeded the warning given her by the security guard at the building. For when she told the security guard which office she was going to, he told her that he hoped she brought holy water with her.

In spite of the fact that you are a married man[1], as a condition of obtaining the job and of

---

[1] Although the sanctity of that marriage you have is up for debate as you told Ms. Villalta that not only could she have sex with you but she could also have sex with your wife.

continued employment, you used your power and influence as Ms. Villalta's soon-to-be and then acting boss to force her to engage in unwelcome sexual activity. During the initial interview, in an effort to see if she was "obedient," you ordered her to strip naked in front of you, performed forced oral sex on her, forced her to perform oral sex on you, and then forced her to engage in sexual intercourse with you, asking her to "swallow [your] remainings" when finished. Then, during her first day of work, which was the next calendar day, while you were on a conference call, you again forced her to perform oral sex on you and then sexual intercourse once again. In classic *quid pro quo* fashion, you promised Ms. Villalta that you would mentor her, which in turn would allow her to advance her position within the Firm and enable her to make more money. The money you were paying her was already more money than she had ever made before.

As if all of the above were not ghastly enough, during sexual intercourse on October 30, 2014, you choked Ms. Villalta tightly in a menacing way, without her consent, telling her, in sum or substance, "if I catch you with someone else I will kill you, you belong to me." Thankfully, on that occasion, a knock at your door saved Ms. Villalta from further physical harm, humiliation and disgrace. But humiliating and disgracing her seemed to be your main objective, as after you forced her to perform oral sex on you, you gruffly turned around and ordered her to "clean your ass." Obtaining and continuing her employment were conditioned on her engaging in these despicable acts; you made those latter facts very clear to her as you repeatedly, both orally and through electronic messages, threatened Ms. Villalta's physical safety if she ever left your employment or if she refused to permit you to violate her. Finally, after a very brief three day dreaded tenure with the Firm, the horror, guilt and shame became too much too bear after you sent her, in the middle of her workday, to a medical clinic to undergo testing for sexually transmitted diseases, as you were concerned that she might have given you an "STD" in general, or "HIV" specifically. Suffice it to say, these allegations are heinous and overstep the boundaries of decency expected in any civilized society.

Your actions constitute a violation of the aforementioned statues and common law. As you might know, the NYCHRL allows for an award of uncapped compensatory and punitive damages and the imposition of attorney's fees for such blatant and willful violations of the law as those at issue here.

This correspondence shall serve as a formal demand to compensate Ms. Villalta for the financial, emotional, physical and other damages caused by you and the Firm that are continuing to accrue. If you have any interest in resolving this matter in a confidential and expedient manner, you, either directly or through your representative, will contact us upon receipt. If we do not hear from you within <u>ten</u> days of receipt of this letter, we will assume that you have no interest in resolving this matter in such a manner. We will then take all steps necessary on behalf of our client to swiftly adjudicate this case in a court of appropriate jurisdiction, naturally making this a matter of public record. Should we take that route, we will of course be forced to dig deep

into your track record of forcing employees to barter fornication in exchange for their employment. There is no telling where this investigation might lead, and we are fully prepared to allocate all necessary resources to that prolonged discovery process to find out.

The above-referenced text is merely a summary, should in no way be construed as a complete recapitulation of all pertinent facts, and is written without prejudice and without waiver of and with full reservation of all of our client's rights and remedies.

Please note that this letter constitutes a notice of intent to sue and any and all documents, including e-mail correspondence and electronically stored information, relating to Ms. Villalta and any potential claims that she may have, should be preserved to every extent possible. We also request the immediate production of any notes, emails, resumes or similar materials that you have in your files in connection with Ms. Villalta. Upon information and belief, you may have recorded some of the incidents through a cellular telephone, webcam or another electronic device. Any such recordings should be specifically preserved. We will need these materials to discuss resolving this matter, and if we are not successful in resolving this matter now, we will certainly obtain all of them through discovery.

Finally, we request that you cease and desist from having any further contact, electronic or otherwise, with Ms. Villalta.

We await a prompt response.

Respectfully,

_____
Michael J. Borrelli, Esq.
*For the Firm*

C:     Client