UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DENISSE VILLALTA,

                 Plaintiff,

                                              **Docket No.: 16-cv-2772-RA-RWL**

        -against-

JS BARKATS P.L.L.C., and SUNNY BARKATS,
an individual,

                 Defendants.
-------------------------------------------------------------------X

## **PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Michael R. Minkoff, Esq. (MM 4787)
Alexander T. Coleman (AC 1717)
Michael J. Borrelli (MB 8533)
BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel. (212) 679-5000
Fax. (212) 679-5005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   PROPOSED FINDINGS OF FACT ........................................................... 2

      A.   General Background ........................................................................ 2

      B.   Defendants' Pattern and Practice of Vile Treatment of Others ............................. 3

      C.   Defendants' More Recent Acts of Abuse and Wrongdoing ................................. 4

      D.   Plaintiff's Emotional and Financial State as a Result of Defendants' Unlawful
           Conduct .......................................................................................... 5

           i.    Plaintiff's Economic Harm ........................................................ 5

           ii.   Plaintiff's Emotional Harm........................................................ 7

III.  CONCLUSIONS OF LAW ........................................................................ 8

      A.   Defendants are Liable under Title VII and the NYCHRL for Sex/Gender
           Discrimination on both Hostile Work Environment and *Quid Pro Quo* Sexual
           Harassment Theories.......................................................................... 8

           i.    Plaintiff's Complaint Properly States a *Prima Facie* Claim for Sex
                 Discrimination Against Defendant JSB, through both Hostile Work
                 Environment and *Quid Pro Quo* Sexual Harassment Theories  under Title
                 VII........................................................................................... 9

           ii.   Plaintiff's Complaint Properly States a *Prima Facie* Claim of Gender
                 Discrimination Against Both Defendants through Hostile Work
                 Environment and *Quid Pro Quo* Sexual Harassment Theories under the
                 NYCHRL. .............................................................................. 11

      B.   Plaintiff is Entitled to an Award of Compensatory Damages.............................. 13

           i.    Plaintiff is Entitled to Economic Damages as Back Pay for her Lost Wages.
                 .............................................................................................. 14

           ii.   Plaintiff is Entitled to Pre-Judgment Interest on Her Back Pay Damages.17

           iii.  Plaintiff is Entitled to "Egregious" Emotional Harm Damages............... 18

C.      Plaintiff is Entitled to an Award of Punitive Damages ......................................... 24

D.      Plaintiff is Entitled to an Award of Reasonable Attorneys' Fees and Costs ........ 29

   i.     Plaintiff is a Prevailing Party ................................................................... 29

   ii.    The Lodestar is the Proper Method to Calculate Attorneys' Fees. ........... 30

          a.      Proposed Hourly Rates Claimed. .................................................. 30

          b.      Total Hours Spent ........................................................................ 33

          c.      Calculation of the Presumptively Reasonable Fee ....................... 37

   iii.   Plaintiff is Entitled to an Award of Costs ................................................. 37

   iv.    Plaintiff is Entitled to an Award of Post-Judgment Interest .................... 38

IV.   CONCLUSION ................................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*28th Highline Assocs., LLC v. Roche*,
   2019 WL 10632855 (S.D.N.Y. July 29, 2019) ........................................................................ 36

*Albunio v. City of N.Y.*,
   947 N.E.2d 135 (2011) ............................................................................................................. 12

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
   2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) ........................................................................ 36

*Angulo v. 36th Street Hospitality, LLC*,
   2020 WL 4938188 (S.D.N.Y. July 31. 2020) ........................................................................ 20

*Antoine v. Brooklyn Maids 26, Inc.*,
   2020 WL 5752186 (E.D.N.Y. Sept. 26, 2020) ....................................................................... 38

*Arlington Central Sch. Dist. Bd. of Educ. v. Murphy*,
   548 U.S. 291 (2006) ................................................................................................................ 37

*Becerril v. E. Bronx NAACP Child Dev. Ctr.*,
   2009 WL 2611950 (S.D.N.Y. Aug. 18, 2009) ....................................................................... 15

*Berger v. Iron Workers Reinforced Rodmen*,
   170 F.3d 1111 (D.C. Cir. 1999) ............................................................................................. 16

*Bergerson v. N.Y.S. Office of Mental Health, Cent. N.Y. Psych. Ctr.*,
   526 Fed. App'x 109 (2d Cir. 2013) ........................................................................................ 16

*BMW of North America, Inc. v. Gore*,
   517 U.S. 559 (1996) .......................................................................................................... 25, 28

*Bouveng v. NYG Capital LLC*,
   175 F. Supp. 3d 280 (S.D.N.Y. 2016) .................................................................................... 20

*Burlington Indus., Inc. v. Ellerth*,
   525 U.S. 742 (1998) ................................................................................................................ 10

*Cavalotti v. Daddyo's BBQ, Inc.*,
   2018 WL 5456654 (E.D.N.Y. Sept. 8, 2018) ........................................................................ 17

*Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*,
699 F.3d 230 (2d Cir. 2012) ................................................................................. 13

*Chauca v. Abraham*,
30 N.Y.3d 325 (2017) .................................................................................... 24, 25

*Chauca v. Abraham*,
885 F.3d 122 (2d Cir. 2018) ................................................................................. 24

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011) ................................................................................... 8

*Crosby v. Homeowners Assistance Servs. of N.Y.*,
2015 WL 3466855 (E.D.N.Y. Feb. 17, 2015) ....................................................... 11

*Danser v. Bagir Int'l*,
571 Fed. App'x 54 (2d Cir. 2014) ........................................................................... 8

*DiSorbo v. Hoy*,
343 F.3d 172 (2d Cir. 2003) ................................................................................. 22

*Duarte v. St. Barnabas Hosp.*,
341 F. Supp. 3d 306 (S.D.N.Y. 2018) ................................................................... 18

*Easterly v. Tri-Star Transp. Corp.*,
2015 WL 337565 (S.D.N.Y. Jan. 23, 2015) .......................................................... 34

*Emamian v. Rockefeller Univ.*,
2018 WL 2849700 (S.D.N.Y. June 8, 2018) ......................................................... 19

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) ............................................................................................. 10

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004) ................................................................................. 13

*Finkel v. Romanowicz*,
577 F.3d 79 (2d Cir. 2009) ..................................................................................... 8

*Garcia v. Comprehensive Ctr., LLC*,
2019 WL 8274296 (S.D.N.Y. Nov. 21, 2019) ................................... 13, 14, 24, 28

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998) ......................................................................... 17, 33

*Gonzalez v. Scalinatella, Inc.*,
   112 F. Supp. 3d 5 (S.D.N.Y. 2015) ...................................................................... 31

*Gortat v. Capala Bros., Inc.*,
   621 Fed. App'x 19 (2d Cir. 2015) ...................................................................... 34

*Green v. N.Y.C. Transit Auth.*,
   2020 WL 5632743 (S.D.N.Y. Sept. 21, 2020) ......................................................... 13

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
   973 F.2d 155 (2d Cir. 1992) ............................................................................ 13

*Gutierrez v. Taxi Club Mgmt., Inc.*,
   2018 WL 3432786 (E.D.N.Y. June 25, 2018) ...................................................... 14, 19

*Hawkins v. 1115 Legal Serv. Care*,
   163 F.3d 684 (2d Cir.1998) ............................................................................. 16

*Healey v. Leavitt*,
   485 F.3d 63 (2d Cir. 2007) ............................................................................. 30

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ......................................................................... 29, 30, 33

*Hernandez v. Premium Merchant Funding One, LLC*,
   2020 WL 3962108 (S.D.N.Y. July 13, 2020) ............................................................ 9

*In re Deluty*,
   540 B.R. 41 (Bankr. E.D.N.Y. 2015) ................................................................... 28

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
   2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) ......................................................... 33

*Joseph v. HDMJ Rest., Inc.*,
   2013 WL 4811225 (E.D.N.Y. Sept. 9, 2013) ......................................................... 17

*Kamiel v. Hai Street Kitchen & Co, LLC*,
   2020 WL 1916534 (S.D.N.Y. Mar. 17, 2020) ......................................................... 16

*Karibian v. Columbia Univ.*,
   14 F.3d 773 (2d Cir. 1994) ............................................................................. 10

*King v. JCS Enterprises, Inc.*,
    325 F. Supp. 2d 162 (E.D.N.Y. 2004) .................................................................. 34

*Koch v. Greenberg*,
    14 F. Supp. 3d 247 (S.D.N.Y. 2014) .................................................................... 38

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999) ............................................................................................. 24

*Kreisler v. Humane Soc'y of New York*,
    2018 WL 4778914 (S.D.N.Y. Oct. 3, 2018) .................................................. 25, 28

*Lee v. Edwards*,
    101 F.3d 805 (2d Cir. 1996) ............................................................................... 25

*Legg v. Ulster Cnty.*,
    2017 WL 3668777 (N.D.N.Y. Aug. 24, 2017) .................................................... 19

*Levy v. Powell*,
    2005 WL 1719972 (E.D.N.Y. July 22, 2005) ..................................................... 17

*Lewis v. Roosevelt Island Op. Corp.*,
    2018 WL 4666070 (S.D.N.Y. Sept. 28, 2018) .................................................... 34

*Lilly v. County of Orange*,
    910 F.Supp. 945 (S.D.N.Y. 1996) ...................................................................... 31

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012) ............................................................................... 19

*MacAlister v. Millenium Hotels & Resorts*,
    2018 WL 5886440 (S.D.N.Y. Nov. 8, 2018) ...................................................... 12

*MacMillan v. Millennium Broadway Hotel*,
    873 F. Supp. 2d 546 (S.D.N.Y. 2012) ........................................................... 20, 24

*Manzo v. Sovereign Motor Cars, Ltd.*,
    2010 WL 1930237 (E.D.N.Y. May 11, 2010) .................................................... 24

*Martinez v. Alimentos Saludables Corp.*,
    2017 WL 5033650 (E.D.N.Y. Sept. 22, 2017) ................................................... 11

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ............................................................................................... 9

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013) ................................................................... 11, 12

*Millea v. Metro-North R. Co.*,
   658 F.3d 154 (2d Cir. 2011) ........................................................................ 30

*Miller-Rivera v. Eddie Jr.'s Sports Lounge, Inc.*,
   2018 WL 3581735 (E.D.N.Y. Jan. 2, 2018) ................................................. 29

*Montblanc–Simplo GmbH v. Colibri Corp.*,
   692 F. Supp. 2d 245 (E.D.N.Y.2010) ............................................................ 8

*Moore v. Houlihan's Rest., Inc.*,
   2011 WL 2470023 (E.D.N.Y. May 10, 2011) ........................................... 14, 29

*Morin v. Modern Cont'l Constr. Co.*,
   2009 WL 2551802 (E.D.N.Y. July 2, 2009) ................................................. 33

*Munson v. Diamond*,
   2017 WL 4863096 (S.D.N.Y. June 1, 2017) ................................................ 14

*Najnin v. Dollar Mountain, Inc.*,
   2015 WL 6125436 (S.D.N.Y. Sept. 25, 2015) ............................................. 14

*Ni v. Bat-Yam Food Servs. Inc.*,
   2016 WL 369681 (S.D.N.Y. Jan. 27, 2016) ................................................. 34

*Noel v. N.Y.S. Office of Mental Health Cent. New York Psychiatric Ctr.*,
   697 F.3d 209 (2d Cir. 2012) ........................................................................ 15

*Offei v. Omar*,
   2012 WL 2086294  (S.D.N.Y. May 18, 2012) .............................................. 20

*Payne v. Jones*,
   711 F.3d 85 (2d Cir. 2013) .......................................................................... 25

*Pelgrift v. 335 W. 41st Tavern Inc.*,
   2017 WL 4712482 (S.D.N.Y. Sept. 28, 2017) ......................................... 9, 11, 12

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) .................................................................................... 30

*Perks v. Town of Huntington*,
   251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ..................................................... 9, 10

vii

*Polk v. N.Y.S. Dep't of Corr. Serv's.*,
  722 F.2d 23 (2d Cir. 1983) ................................................................. 30

*Putnam Leasing Co. v. Fields*,
  2007 WL 2230160 (E.D.N.Y. June 27, 2007) .......................................... 33

*Quinby v. WestLB AG*,
  2008 WL 3826695 (S.D.N.Y. Aug. 15, 2008) ......................................... 26

*Ravina v. Columbia Univ.*,
  2019 WL 1450449 (S.D.N.Y. Mar. 31, 2019) .................................. *passim*

*Redd v. N.Y. Div. of Parole*,
  678 F.3d 166 (2d Cir. 2012) .......................................................... 9, 11

*Reed v. A.W. Lawrence & Co.*,
  95 F.3d 1170 (2d Cir. 1996) ............................................................. 15

*Reiter v. Metro. Transp. Auth. of N.Y.*,
  457 F.3d 224 (2d Cir. 2006) ............................................................. 30

*Rodriguez v. Express World Wide, LLC*,
  2014 WL 1347369 (E.D.N.Y. 2014) ................................................ 12, 17

*Rosas v. Baiter Sales Co. Inc.*,
  2018 WL 3199253 (S.D.N.Y. June 29, 2018) ......................................... 25

*Rozell v. Ross-Holst*,
  576 F. Supp. 2d 527 (S.D.N.Y. 2008) .................................................. 31

*Salto v. Alberto's Constr., LLC*,
  2020 WL 4383674 (S.D.N.Y. July 31, 2020) ......................................... 31

*Setty v. Fitness*,
  2018 WL 8415414 (E.D.N.Y. Dec. 18, 2018) ........................................ 12

*Shariff v. Alsaydi*,
  2013 WL 4432218 (E.D.N.Y. Aug 15, 2013) ......................................... 30

*Sooroojballie v. Port Auth. of N.Y. & N.J.*,
  816 Fed. App'x 536 (2d Cir. 2020) .................................................... 18

*Stampf v. Long Island R.R. Co.*,
  761 F.3d 192 (2d Cir. 2014) ............................................................. 18

*Stanczyk v. City of New York,*
  2014 WL 2459695 (2d Cir. June 3, 2014) ............................................................ 30

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
  538 U.S. 408 (2003) ........................................................................................... 26

*Syrnik v. Polones Constr. Corp.,*
  918 F. Supp. 2d 262 (S.D.N.Y. 2013) ................................................................. 25

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,*
  489 U.S. 782 (1989) ........................................................................................... 29

*Therapy Prod., Inc. v. Bissoon,*
  2010 WL 2404317 (S.D.N.Y. Mar. 31, 2010) .................................................... 36

*Thomas v. iStar Fin. Inc.,*
  508 F. Supp. 2d 252 (S.D.N.Y. 2007) ................................................................. 17

*Thomas v. iStar Fin. Inc.,*
  652 F.3d 141 (2d Cir. 2011) ......................................................................... 26, 28

*Tlacoapa v. Carregal,*
  386 F. Supp. 2d 362 (S.D.N.Y. 2005) ................................................................. 33

*Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and
  Apprenticeship, Skill, Improvement and Safety Funds v. WJL Equities Corp.,*
  2015 WL 6965146 (E.D.N.Y. Nov. 10, 2015) .................................................... 34

*Turley v. ISG Lackawanna, Inc.,*
  774 F.3d 140 (2d Cir. 2014) ........................................................................ *passim*

*United States v. Burke,*
  504 U.S. 229 (1992) ........................................................................................... 15

*Vance v. Ball State Univ.,*
  570 U.S. 421 (2013) ........................................................................................ 9, 10

*Walpert v. Jaffrey,*
  127 F. Supp. 3d 105 (S.D.N.Y. 2015) ................................................................... 8

*Warnke v. CVS Corp.,*
  265 F.R.D. 64 (E.D.N.Y. 2010) .......................................................................... 16

*Wiercinski v. Mangia 57, Inc.*,
   787 F.3d 106 (2d Cir. 2015) ........................................................................... 24

*Wong v. Hunda Glass Corp.*,
   2010 WL 3452417 (S.D.N.Y. Sept. 1, 2010) ................................................. 31

*Workneh v. Supper Shuttle Int'l. Inc.*,
   2016 WL 5793744 (S.D.N.Y. 2016) ............................................................... 12

**Statutes**                                                                                     **Page(s)**

11 U.S.C. § 1328(a)(4) ...................................................................................... 28

28 U.S.C. § 1828 ............................................................................................... 37

28 U.S.C. § 1920 ............................................................................................... 37

28 U.S.C. § 1923 ............................................................................................... 37

28 U.S.C. § 1961(a) ..................................................................................... 17, 38

42 U.S.C. § 1981a(b)(1) .................................................................................... 24

42 U.S.C. § 1981a(b)(3) .................................................................................... 14

42 U.S.C. § 2000e-2(a)(1) ................................................................................... 9

42 U.S.C. § 2000e-5(g)(1) ...................................................................... 14, 15, 16

42 U.S.C. § 2000e–5(k) ..................................................................................... 29

N.Y.C. Admin Code § 8-102 ............................................................................. 12

N.Y.C. Admin Code § 8-107(a) ......................................................................... 13

N.Y.C. Admin. Code § 8-502(a) ........................................................................ 24

N.Y.C. Admin. Code § 8–502(f) ........................................................................ 29

## I.      <u>PRELIMINARY STATEMENT</u>

At the Court's direction in its Order of August 24, 2020, ECF # 95, Plaintiff Denisse Villalta submits her Proposed Findings of Fact and Conclusions of Law, seeking an award of damages on her claims alleging hostile work environment and *quid pro quo* sexual harassment against Defendant JS Barkats, P.L.L.C., a Manhattan law firm ("JSB"), under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and against both JSB and its principal, Defendant Sunny Barkats ("Barkats"), for the same claims under Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law ("NYCHRL").  As the Court is well-familiar, this case involves Barkats's vile and egregious sexual assault against Plaintiff as part of her job interview for Defendants' law firm, leading to Barkats's second sexual assault against Plaintiff during her first day of work, which led to Barkats's demand that Plaintiff get tested for sexually transmitted diseases on her second and final day of work, followed by Barkats's six-year-long harassment of Plaintiff after she fled the job.  Because Barkats's litigation strategy herein was, in some respects, nearly as reprehensible as his conduct towards Plaintiff that gave rise to this action, on July 14, 2020, District Judge Ronnie Abrams entered judgment by default against both Defendants, adopting this Court's February 3, 2020 report and recommendation finding dispositive sanctions warranted in light of Defendants' abusive tactics over the course of this litigation.

Now, Plaintiff seeks to end this case once and for all and obtain justice against Defendants. To that end, Plaintiff respectfully requests that the Court grant her damages and enter judgment as follows:

1. Compensatory Damages:

- Economic Damages:

  Back pay: $49,071.65;

  Interest on lost wages: $3,441.16, plus $1.59 per day from the date of Plaintiff's submission through the date that the Court enters judgment;

- Emotional harm damages: $1,000,000;

2. Punitive Damages: $2,000,000;

3. Attorney's Fees: $121,266.24;

4. Litigation Costs: $2,312.34, and

5. Post-judgment interest: in an amount to be set by the Clerk of the Court

Plaintiff's proposed findings of fact and conclusions of law are set forth below.

## II.   **PROPOSED FINDINGS OF FACT**

### A.   **General Background**

1.       Plaintiff filed this action in the United States District Court for the Southern District of New York on April 13, 2016. ECF # 1.

2.       For a detailed recitation of the facts alleged, explaining Defendants' egregious *quid pro quo* sexual harassment and assault and subsequent malicious behavior after Plaintiff fled her employment with Defendants, all of which by virtue of Defendants' default are deemed true, *see generally* ECF # 1.

3.       For a detailed recitation of the procedural history of this matter - - chronicling what is now a nearly five-year long action with extensive obstructive delays by Defendants - - Plaintiff respectfully refers the Court to her July 10, 2019 letter motion to compel, ECF # 78, which incorporates by reference the following: ECF # 1 (Complaint) (Apr. 13, 2016); ECF # 16 (Motion

to Lift Arbitration Stay) (Dec. 27, 2016), through ECF # 67 (Order Substituting Defendants'
Counsel) (Jan. 22, 2019); ECF # 53 (Order Denying Defendants' Request to Stay Pending Appeal
(Nov. 20, 2018); *Villalta v. JS Barksts PLLC*, Case No. 18-2530, ECF # 38 (Dismissing Appeal
for Failure to Prosecute) (2d Cir. Dec. 6, 2018); *see generally also Lewis Family Group Fund LP
v. JS Barkats PLLC,* Case No. 1:16-cv-05255-AJN-JLC (S.D.N.Y.) (describing Defendants
herein's virtually identical pattern of abusive delay in said matter).  This Court has also noted
Defendants' delays in its February 3, 2020 Report and Recommendation to the Honorable Ronnie
Abrams regarding Default Sanctions (hereinafter "R&R"). *See* ECF # 90, at 1-4.  And on July 14,
2020, Judge Abrams adopted this Court's R&R in its entirety - - further noting Defendants'
egregious dilatory tactics throughout this litigation. *See* ECF # 93 at 1-2.

### B.    Defendants' Pattern and Practice of Vile Treatment of Others

4.      In addition to the Plaintiff's allegations, other former employees of Defendants
have reported similar abusive and predatory behavior by Defendant Barkats acting in his role as
the principal of his law firm Defendant JSB.  Specifically, Defendants' former office manager,
Stacey Spinelli - - who briefly worked for Defendants from April 29, 2013 through May 2013 - -
confirms that Barkats would regularly "belittle the female employees who worked for him and
make several inappropriate comments to the female staff members on the basis of their sex." *See*
Spinelli Aff. ¶ 8.  Spinelli testifies that Barkats "commented that female employees should be
'obedient'" and when questioned about his inappropriate behavior he would respond "I am a
lawyer so I can do whatever I want." *Id.*, ¶¶ 10-12.  Barkats also openly bragged to Spinelli about
how his experience as a former member of the Israeli army meant "that he could 'kill someone
with [his] thumb" [and that as a result] [m]any women in the office informed [Spinelli] that they
feared him." *Id.*, ¶ 13.  Spinelli: observed three female employees "abruptly  leave  their

employment" during her brief one-month tenure with Defendants' law firm; witnessed "female employees cry at work in the women's bathroom on more than two occasions"; and routinely spoke with other female employees who stated that "they feared [Barkats] but desperately needed their jobs for financial reasons." *Id.*, ¶ 14; *see also* Fed. R. Ev. 406.

5.      But mere unprofessional and misogynist comments were not the limit for Barkats. Another individual, Neera Shivecharan, describes circumstances almost *identical* to those alleged by Plaintiff here almost exactly one year prior to Defendants' sexual assaults of Plaintiff - - namely that in October 2013, Barkats offered her a full-time job at his law firm in exchange for performing "sexual favors" and when she declined, Barkats sexually assaulted her in his law firm office. *See generally*, Shivecharan Aff., ¶¶ 5-12 (describing in vivid detail Barkats forcibly penetrating Shivecharan and directing her to keep her "filthy mouth shut" and instructing her to get tested for sexually transmitted diseases to start the job.).[1]

### C.      Defendants' More Recent Acts of Abuse and Wrongdoing

6.      While Plaintiff stopped working for Defendants immediately after she began, Defendant Barkats has - - from time to time - - continued to harass and threaten Plaintiff, including as recently as November 2019 when he attempted to unlawfully purchase her testimony and threatened to produce a pornographic film depicting his account of his sexual assault against Plaintiff, and again in February 2020 when he again attempted to purchase her testimony through promise of a "reward." *See* Villalta Decl., ¶ 15.

7.      Despite remaining a self-described fugitive who has fled the United States "'apparently to elude his arrest for criminal indictment on grand larceny here in New York,'" *see*

---

[1] The affidavit references and attaches text messages and photographs exchanged between Shivecharan and Barkats. So as not to embarrass Barkats unnecessarily, Plaintiff has redacted what Barkats, in his text, claimed to be an image of his own penis. Should the Court so require, Plaintiff will re-submit an unredacted version of this image.

ECF # 93 at 2 (quoting R&R at 1-2), Defendant Barkats is - - quite shockingly - - still somehow actively engaged in the practice of law on behalf of clients in New York, while allegedly attempting to hide out in France to avoid apprehension by the New York authorities. *See* Minkoff Decl., ¶ 3.

8.      Even worse, Barkats is attempting to gain admission to the French *Tribunal de Commerce*, the French Commercial Court, in Paris, France, as he was scheduled to sit for an admissions examination for said court on September 17, 2020. *See* Minkoff Decl., ¶ 3.

**D.      Plaintiff's Emotional and Financial State as a Result of Defendants' Unlawful Conduct**

9.      Since fleeing from Defendants, Plaintiff's career has struggled severely - - largely due to her emotional trauma suffered as a result of Defendants' harassment and assault. *See generally*, Villalta Decl., ¶¶ 5-21.

### *i.      Plaintiff's Economic Harm*

10.      Plaintiff was unable to find a steady job after leaving Defendants employ until mid-June 2015 when she began working for a male doctor.  She remained out of work for over thirty-two weeks until finding that job aside from intermittent minimum wage hourly retail work. However, Plaintiff found it emotionally taxing to work for a male superior, fearing harassment or violence from another male superior as a result of the trauma caused by Barkats, and as a result Plaintiff was forced to resign after merely three months of work. Villalta Decl., ¶ 7.

11.      Plaintiff was then in and out of jobs for the next year, until she was able to obtain a steady job in late June 2016, working for a female doctor. Villalta Decl., ¶¶ 7-10.

12.      Due to severe ongoing mental trauma cased by her residual low self-esteem and poor body image after Barkats's assault and harassment, Plaintiff stopped working again in April or May 2018 and sought (and received) elective plastic surgery, hoping that she could change what

she perceived to be deficiencies in herself that might cause other predators like Barkats to prey on her again in the future.  Plaintiff remained out of work until mid-August of 2018. Villalta Decl., ¶¶ 10-11.

13.     She again found a job in mid-August 2018, but for the first time in several years working again for a male superior.  Still troubled by her fears, anxiety, and depression stemming from Barkats's assault, she found herself again unable to continue to work for a male boss and again Plaintiff left her job after two months.  She then found another job for another male boss, attempting to see if the problem was unique to that job, or if it applied to all male superiors.  She continued working at this new job - - for Mudgil Dermatology, P.C. - - until in or around July 2019.  She still could not become comfortable working for a male boss, and she therefore left the job to accept a lower-paying job to work for a female boss in August 2019, hoping that things would be less emotionally taxing away from a male-dominated work environment. Villalta Decl., ¶¶ 12-13.

14.     Within six months, Plaintiff finally found gainful employment, working for another female boss, in February 2020, where she remained employed until September 27, 2020, losing that job due to COVID-19 financial constraints on her employer. Villalta Decl., ¶ 13.

15.     As a result of her inability to keep a job for an extended period for the last six years, which itself is a result of Barkats's harassment and assault, Plaintiff has lost an estimated $49,071.65in wages from her first leaving Defendants' employ through beginning her most recent job on or around February 1, 2020. *See generally* Villalta Decl., ¶¶ 7-13; *see also* Minkoff Decl., ¶ 4 (including damages calculation exhibit).

## ii.  *Plaintiff's Emotional Harm*

16.     Plaintiff's lost wages only represent a small portion of the harm that she has suffered as a result of Defendants' *quid pro quo* sexual harassment and Barkats's sexual assault on her, as well as his continued threats and intimidating behavior.  Though Plaintiff only worked for Barkats for two days, Barkats continued to torment Plaintiff by phone and online for months, and has continued to contact her on and off again throughout the lawsuit, as recently as November 2019 and again in February 2020. Villalta Decl., ¶¶ 14-15 (citing Feb. 3, 2020 text message with Barkats promising Plaintiff a "reward" if she testifies for Barkats). *See also* ECF # 87-3 (Nov. 13. 2019 text message from Barkats to Villalta bribing her to perjure herself and threatening revenge porn film production if she refuses).

17.     Plaintiff treated with a therapist, Lauren Urban, LCSW, from January 2015 through late November 2015. *See* Decl. of Lauren Urban, ¶¶ 3-7 (Nov. 18, 2020).  As reflected in Ms. Urban's progress notes, Plaintiff's experience with Defendants "has impacted [Plaintiff's] daily functioning" with "paranoid" feelings and finding herself "fearful that [Defendant Barkats] is following her." *See id.*, Exhibit A at 1.  Plaintiff experienced anxiety and depression as a result of Barkats's harassment and assault, causing "withdrawal from friends and family, ongoing unemployment, distrust and difficulty with romantic relationship, and impaired functioning at school." *Id.*, Exhibit A, at 2.  Plaintiff's paranoia, anxiety, and depression caused her to "find herself drinking to excess," *id.* at 4, and that her ongoing mental harm and alcohol consumption arising out of the same "escalated" into a physical altercation with a friend, prompting more feelings of "very low self-esteem" *id.* at 6.  Plaintiff's depression caused her to lose hope in the prospect of holding Defendants "accountable for the impact [Barkats's] actions have had on her life [because Plaintiff] felt that [Barkats's] attorneys would try to discredit her [and she] expressed

feeling fearful of judgment by others." *Id.* at 8.  This led to Plaintiff feeling "overwhelmed by trying to find work and maintaining a consistent schedule." *Id.* at 9.  Ultimately, Plaintiff stopped treating - - due to that very feeling of being overwhelmed - - despite her desire to continue to attend regularly scheduled sessions with Ms. Urban. *Id.* at 9-10; *see also* Villalta Decl., ¶ 16.

18.     After Plaintiff stopped treating, her condition worsened.  Plaintiff began gaining weight caused by stress eating, became unable to sleep through the night due to frequent nightmares, and on three separate occasions in late 2015 / early 2016, engaged in self-harm by cutting, and experienced suicidal thoughts.  Plaintiff's hair began thinning, going so far as to develop a bald spot on her head despite no history of alopecia in her family.  Plaintiff felt "completely worthless," and developed "thoughts about ending [her] life." Villalta Decl., ¶¶ 17-21

19.     Plaintiff continues to experience severe anxiety and depression, is unable to sleep through the night, and fears Barkats's ongoing harassment at any moment.  *Id.*, ¶ 21.

III.     **CONCLUSIONS OF LAW**

A.     **Defendants are Liable under Title VII and the NYCHRL for Sex/Gender Discrimination on both Hostile Work Environment and *Quid Pro Quo* Sexual Harassment Theories.**

Due to their default, Defendants are deemed to have admitted all of the well-pleaded factual allegations contained in the Complaint, except for those relating to damages. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  Plaintiff still bears the burden of showing that she is entitled to recovery as a matter of law. *See Danser v. Bagir Int'l*, 571 Fed. App'x 54, 55 (2d Cir. 2014) (summary order); *Mickalis*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84.  "This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend." *Walpert v. Jaffrey*, 127 F. Supp.

3d 105, 129 (S.D.N.Y. 2015) (citing *Montblanc–Simplo GmbH v. Colibri Corp.*, 692 F. Supp. 2d

245, 253 (E.D.N.Y.2010)).  For the reasons explained below, Defendants are liable to Plaintiff on

all claims.

> ### i.     *Plaintiff's Complaint Properly States a Prima Facie Claim for Sex Discrimination Against Defendant JSB, through both Hostile Work Environment and Quid Pro Quo Sexual Harassment Theories under Title VII.*

Under Title VII, it is unlawful for "an employer . . . to discriminate against any [employee]

with respect to . . . sex." 42 U.S.C. § 2000e-2(a)(1).  "[T]he kinds of workplace conduct that may

be actionable under Title VII . . . include '[u]nwelcome sexual advances, requests for sexual favors,

and other verbal or physical conduct of a sexual nature.'" *Redd v. New York Div. of Parole*, 678

F.3d 166, 175 (2d Cir. 2012) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986))

(alterations in original).  Sexual harassment in the workplace violates Title VII's prohibition

against sex discrimination when it fits into either of two paradigms: hostile work environment or

*quid pro quo* sexual harassment.

The hostile work environment paradigm of sexual harassment under Title VII permits a

plaintiff to recover if the plaintiff can show that the harassment was "severe or pervasive" as to

"alter the conditions of [the victim's] employment and create an abusive working environment."

*Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1154-55 (E.D.N.Y. 2003) (quoting *Meritor*,

477 U.S. at 67).  An entity employer will be held vicariously liable for a hostile environment

created by a supervisor, defined as anyone "'empowered by the employer to take tangible

employment actions against the victim.'" *Hernandez v. Premium Merchant Funding One, LLC*,

2020 WL 3962108, at *12 (S.D.N.Y. July 13, 2020) (quoting *Vance v. Ball State Univ.*, 570 U.S.

421, 450 (2013)); *see also Pelgrift v. 335 W. 41st Tavern Inc.*, 2017 WL 4712482, at *6 (S.D.N.Y.

Sept. 28, 2017) (citing *Redd*, 678 F.3d at 182) (same).  An employer will be strictly liable for a

supervisor's hostile work environment either when the supervisor's hostile work environment results in tangible adverse action, or without any tangible action when the employer fails to establish its right to assert an affirmative defense. *Vance*, 570 U.S. 430-31.[2]

The *quid pro quo* sexual harassment paradigm is defined as follows:

> *Quid pro quo* sexual harassment refers to situations in which 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual . . . [i]t is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job.'

*Perks*, 251 F. Supp. 2d at 1154-55 (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 777-78 (2d Cir. 1994)) (alterations in original).  Employers are strictly liable for *quid pro quo* harassment committed by supervisors. *Vance*, 570 U.S. at 420 (citing *Faragher*, 524 U.S. at 807 and *Ellerth*, 524 U.S. at 765.

Here, Plaintiff properly alleges both hostile work environment and *quid pro quo* sexual harassment under Title VII against by Defendant JSB.  Indeed, it is difficult to imagine a more "severe or pervasive" form of harassment than those described in Plaintiff's allegations, or a more prototypical example of *quid pro quo*. *See generally* ECF # 1, ¶¶ 14-41 (describing, in gory detail: Barkats's efforts to recruit Plaintiff, interview her while forcing her to strip completely naked to display her "obedience" to him, and then proceed to have forced oral sex and sexual intercourse with Plaintiff as a precondition to receiving a job offer; Barkats forcing Plaintiff to have sex with him during her first day of work and then forcefully choking her and threatening her during and

---

[2] An employer may establish an affirmative defense to a supervisor's alleged hostile work environment by showing that: (1) it exercised reasonable care to prevent and promptly correct any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided. *Vance*, 570 U.S. at 431 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); and *Burlington Indus., Inc. v. Ellerth*, 525 U.S. 742, 765 (1998)).

following same; Barkats directing Plaintiff to get tested for sexually transmitted diseases as a condition for continuing her job; and when Plaintiff stopped working for Defendants, Barkats continuing to harass Plaintiff through text messages and social media by sending threatening images, *e.g.*, of himself brandishing a knife).

Because Barkats is the owner, founder, and managing partner of Defendant JSB, which employed fifteen or more employees, *see generally* ECF # 1, ¶¶ 8-11, Defendant JSB is vicariously liable for Barkats's *quid pro quo* harassment and hostile work environment. *Pelgrift*, 2017 WL 4712482, at *6 (citing *Redd*, 678 F.3d at 182).   Indeed, by virtue of Defendants' default, JSB is unable to meet its burden to establish an affirmative defense to Plaintiff's hostile work environment claim. *Martinez v. Alimentos Saludables Corp.*, 2017 WL 5033650, at *8 n.6 (E.D.N.Y. Sept. 22, 2017) ("Since defendants have defaulted, they have not availed themselves of any of the affirmative defenses provided by statute.").   But even had JSB presented any evidence, Plaintiff's constructive discharge represents a tangible adverse action, foreclosing any chance at establishing Defendant JSB's affirmative defense to Plaintiff's hostile work environment claim. *See Crosby v. Homeowners Assistance Servs. of N.Y.*, 2015 WL 3466855, at *3-4 (E.D.N.Y. Feb. 17, 2015) (on default motion, finding plaintiff's fear of reprisal based on *quid pro quo* overtures leading to her resignation met standard for constructive discharge).   Defendant JSB is therefore liable to Plaintiff for sex discrimination in violation of Title VII on both theories.

> ### ii.     *Plaintiff's Complaint Properly States a* **Prima Facie** *Claim of Gender Discrimination Against Both Defendants through Hostile Work Environment and* **Quid Pro Quo** *Sexual Harassment Theories under the* <u>*NYCHRL.*</u>

Plaintiff also brings her same sexual harassment/gender discrimination claims under the NYCHRL, as she worked for Defendants in Manhattan.   "Courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole*

*Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Under the NYCHRL, discrimination claims are construed liberally in favor of plaintiffs to the extent that such a construction is reasonably possible. *MacAlister v. Millenium Hotels & Resorts*, 2018 WL 5886440, at *8 (S.D.N.Y. Nov. 8, 2018) (citing *Albunio v. City of N.Y.,* 947 N.E.2d 135, 137 (2011)).  That is, "unlike the federal statutes and the NYSHRL, 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" *Id.* (quoting *Mihalik*, 715 F.3d at 114).  While the NYCHRL does not serve as a "general civility code," a showing that "the plaintiff was treated less well because of a discriminatory intent would suffice." *Id.* (citing *Workneh v. Supper Shuttle Int'l. Inc.*, 2016 WL 5793744, at *9 (S.D.N.Y. 2016)).  Because Plaintiff here has amply alleged that she was "treated less well" than her male counterparts through the above-described job offer and being forced to work in a setting conditioned upon acquiescing to Barkats's sexual assault, Plaintiff has met her burden in establishing a *prima facie* case of NYCHRL gender discrimination. *See generally* ECF # 1, ¶¶ 14-41.

In addition, while the NYCHRL does not distinguish *quid pro quo* claims from hostile work environment ones - - focusing instead on "unequal treatment based on gender," *Setty v. Fitness*, 2018 WL 8415414, at *8 (E.D.N.Y. Dec. 18, 2018), *report and recommendation adopted sub nom. Setty v. Synergy Fitness*, 2019 WL 1292431 (E.D.N.Y. Mar. 21, 2019) (citing *Mihalik*, 715 F.3d at 114) - - a *quid pro quo* claim is of course actionable under the NYCHRL as long as a plaintiff has received unequal treatment based on her gender, regardless of whether that treatment resulted in "tangible conduct or not," with "even a single comment [] actionable in appropriate circumstances." *Mihalik*, 715 F.3d at 114.  Moreover, while Title VII does not allow individual defendants to be held personally liable, the NYCHRL does provide for individual liability. *See Pelgrift*, 2017 WL 4712482, at *12–13 (citing *Rodriguez v. Express World Wide*, *LLC*, 2014 WL

1347369, at *4 (E.D.N.Y. 2014)); *compare also* N.Y.C. Admin Code § 8-102 (defining "employer" broadly to include natural persons), *with id.* § 8-107(a) (defining "unlawful discriminatory practice" as actionable against "any employer or an employee or agent thereof"). Individuals will be liable under the NYCHRL for discrimination regardless of possessing any decisionmaking power; they need only "participate in the conduct giving rise to a discrimination claim." *Green v. N.Y.C. Transit Auth.*, 2020 WL 5632743, at *11 (S.D.N.Y. Sept. 21, 2020) (citing *Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004)).  Plaintiff has alleged that Defendant Barkats is directly liable for both the hostile work environment and *quid pro quo* sexual harassment as the alleged perpetrator, directly participating in the conduct giving rise to Plaintiff's claims. *See generally* ECF # 1, ¶¶ 14-41.  As a result, both Defendants are jointly and severally liable for violating the NYCHRL.

### B.   Plaintiff is Entitled to an Award of Compensatory Damages.

When assessing Defendants' default, "[a]lthough the Court must accept all well-pleaded facts as true when determining liability, it need not – and indeed cannot – rely on the plaintiff's unsupported allegations to establish her damages." *Garcia v. Comprehensive Ctr., LLC*, 2019 WL 8274296, at *4–5 (S.D.N.Y. Nov. 21, 2019), *report and recommendation adopted*, 2020 WL 1435002 (S.D.N.Y. Mar. 24, 2020) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  Rather, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine [if] there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

13

"Under Title VII, victims of employment discrimination are entitled to reasonable damages that would make the plaintiff whole for injuries suffered on account of unlawful employment discrimination." *Munson v. Diamond*, 2017 WL 4863096, at *7 (S.D.N.Y. June 1, 2017), *report and recommendation adopted*, 2017 WL 4862789 (S.D.N.Y. Oct. 26, 2017) (citations and internal quotation and editorial marks omitted).  Such damages may include compensation for economic loss and for pain and suffering, and are also available under the NYCHRL. *Id*.; *see also Moore v. Houlihan's Rest., Inc.*, 2011 WL 2470023, at *4 (E.D.N.Y. May 10, 2011) ("Title VII [and the] NYCHRL entitle a plaintiff to compensatory damages for pecuniary loss as well as pain and suffering."), *report and recommendation adopted*, 2011 WL 2462194 (E.D.N.Y. June 17, 2011).

Title VII places a sliding cap on compensatory (and punitive) damages based on employer size, with the lowest damages amount capped at $50,000 for employers of between fourteen and 100 employees, ranging upwards to $300,000 for employers with 500 or more employees in at least twenty calendar weeks of the year. 42 U.S.C. § 1981a(b)(3).  While Title VII limits the amount of damages that can be awarded as non-economic compensatory or punitive damages, the NYCHRL does not; as a result, courts allocate damages exceeding Title VII's cap to the NYCHRL when pleaded simultaneously. *See Gutierrez v. Taxi Club Mgmt., Inc.*, 2018 WL 3432786, at *6, *10 (E.D.N.Y. June 25, 2018) (collecting cases and awarding non-economic compensatory and punitive damages exceeding Title VII cap under the NYCHRL).

### i.     *Plaintiff is Entitled to Economic Damages as Back Pay for her Lost Wages.*

"Back pay is a specific remedy for unlawful discrimination under Title VII," and is also available under the NYCHRL. *Garcia*, 2019 WL 8274296, at *5 (citing *Najnin v. Dollar Mountain, Inc.*, 2015 WL 6125436, at *2 (S.D.N.Y. Sept. 25, 2015)); *see also* 42 U.S.C. § 2000e-5(g)(1)).  Back pay is generally calculated as "'an amount equal to the wages the employee would

14

have earned from the date of discharge to the date of reinstatement.'" *Noel v. N.Y.S. Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012) (quoting *United States v. Burke*, 504 U.S. 229, 239 (1992)).  Where, as here, reinstatement is not requested, a "plaintiff's entitlement to back pay is generally reduced or eliminated when she obtains, or could have obtained, paid employment elsewhere." *See* 42 U.S.C. § 2000e-5(g)(1) ("[i]nterim earnings or amounts earnable with reasonable diligence . . . shall operate to reduce the back pay otherwise allowable"); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1182 (2d Cir. 1996) ("A plaintiff has the duty to exercise reasonable diligence in mitigating damages by seeking alternative employment.") (internal citations and quotation and editorial marks omitted).  "The same standards used to award . . . back pay in Title VII discrimination cases also apply to cases arising under [ ] NYCHRL." *Becerril v. E. Bronx NAACP Child Dev. Ctr.*, 2009 WL 2611950, at *3 (S.D.N.Y. Aug. 18, 2009), *report and recommendation adopted*, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009).

Here, Plaintiff provides her sworn declaration and the declaration of her therapist, Lauren Urban, LCSW, as evidence of her damages.  With respect to her economic loss, as Plaintiff describes in her declaration, as a result of her ongoing trauma and emotional suffering caused by Barkats's assault and harassment, Plaintiff's education suffered, and as a result she was in and out of jobs following her ordeal with Barkats. *See generally* Villalta Decl., ¶¶ 5-13.  Plaintiff calculates her lost wages at $49,071.65, through and including February 1, 2020, when she began working her most recent job. *Id.*; *see also* Minkoff Decl., ¶ 4, Exhibit 2 (damages spreadsheet).  While Plaintiff obtained paid employment following Barkats's harassment and assault, as a result of her low self-esteem and emotional harm suffered from what Barkats did to her, she was forced to leave those jobs from time to time while struggling with her anxiety, depression, and low self-esteem -

- all caused by Barkats. Villalta Decl., ¶¶ 8, 16-21.  Plaintiff submits, therefore, that she is entitled to her lost wages through her most recent job because, prior to February 1, 2020, she was either unable to keep a good paying job, or was always earning less than what Barkats had promised her, which was $30,000 annually. *See* Villalta Decl., ¶ 4; *see also* 42 U.S.C. § 2000e-5(g)(1) (describing mitigation as functioning to "reduce" back-pay - - not eliminate it or cut it off entirely).

Indeed, a plaintiff's need to leave employment to accept a lower-paying job should be factored into a back-pay award. *See, e.g., Kamiel v. Hai Street Kitchen & Co, LLC*, 2020 WL 1916534, at *4 (S.D.N.Y. Mar. 17, 2020) ("Plaintiff properly mitigated her damages by finding new employment after 20 weeks, but it was at a lower salary.  Thus, Plaintiff is entitled to recover the income she lost during the twenty-week period[ ].  She also is entitled to recover the damages she seeks for a two-year period thereafter in the amount of the income that she lost by having to work at a lower paying job[]."); *see also Warnke v. CVS Corp.*, 265 F.R.D. 64, 67 (E.D.N.Y. 2010) (citing *Berger v. Iron Workers Reinforced Rodmen*, 170 F.3d 1111, 1133-34 (D.C. Cir. 1999)) (describing, in general, the "lowered sights doctrine," wherein a plaintiff is "required to 'lower his sights' in order to mitigate his losses, and an employer who is liable under Title VII bears the burden of showing that, notwithstanding this rule, Plaintiff failed to mitigate").  This is because "a voluntary quit does not toll the back pay period when it is motivated by unreasonable working conditions or an earnest search for better employment." *Bergerson v. N.Y.S. Office of Mental Health, Cent. N.Y. Psych. Ctr.*, 526 Fed. App'x 109, 111 (2d Cir. 2013) (citing *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 696 (2d Cir.1998)).[3]  As a result, the Court should award Plaintiff back pay through February 2020, as she was left with little choice but to leave various jobs based

---

[3] Plaintiff does not seek an award of front pay.

on her "search for better employment" arising out of her lasting trauma that Defendants caused her.

ii.      ***Plaintiff is Entitled to Pre-Judgment Interest on Her Back Pay Damages.***

Interest on compensation for lost wages is generally awarded under Title VII and the NYCHRL. *See Cavalotti v. Daddyo's BBQ, Inc.*, 2018 WL 5456654, at *28–29 (E.D.N.Y. Sept. 8, 2018) (citing *Rodriguez*, 2014 WL 1347369, at *7 n.5). Indeed, to the extent that damages awarded to the plaintiff represent compensation for lost wages, "it is ordinarily an abuse of discretion *not* to include pre-judgment interest." *Rodriguez*, 2014 WL 1347369, at *7 (citing *Gierlinger*, 160 F.3d at 873) (citation omitted and emphasis in original). An award of prejudgment interest on a plaintiff's back pay award is appropriate "because it serves to compensate the plaintiff for loss of the use of money wrongfully withheld [because of defendants' discrimination]." *Id.* (citing *Thomas v. iStar Fin. Inc.*, 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007)).

When calculating pre-judgment interest on discrimination claims "based on violations of both federal and state law, courts in this circuit uniformly have applied a federal interest rate, most commonly based on the average rate of return on one-year Treasury bills for the relevant time period." *Id.* (citing *Thomas*, 508 F. Supp. 2d at 264). As Plaintiff's claim arose under both federal and local New York City laws, the appropriate rate of interest "is the federal interest rate based on the average rate of return on one-year Treasury bills for the relevant time period between the time the claim [arose in this case] until the entry of judgment pursuant to 28 U.S.C. § 1961(a)." *Id.* at 264 (citing *Levy v. Powell*, 2005 WL 1719972, at * 3 (E.D.N.Y. July 22, 2005)). Interest should then be compounded annually. *Id.*, n.6 (citing *Joseph v. HDMJ Rest., Inc.*, 2013 WL 4811225, at *15 (E.D.N.Y. Sept. 9, 2013)).

As set forth in the Minkoff Declaration, the average one-year Treasury bills rate from October 29, 2014 to the present - - based on daily changes to the same - - is 1.136%.[4]  *See* Minkoff Decl., ¶ 4, Exhibit 2-A.  As a result, Plaintiff seeks an award of economic damages as follows:

- Lost Wages: $49,071.65

- Compounded interest through December 2, 2020: $3,441.16

- Additional interest per day from date of this filing through judgment: $1.59

- Total back pay award to date: $52,512.81

### iii.   *Plaintiff is Entitled to "Egregious" Emotional Harm Damages.*

Although "[a]wards for mental and emotional distress are inherently speculative . . . a legal system [nevertheless] has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." *Ravina v. Columbia Univ.*, 2019 WL 1450449, at *11–12 (S.D.N.Y. Mar. 31, 2019) (Abrams, *J.*) (citing *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 205 (2d Cir. 2014)) (internal quotation marks omitted).  The Second Circuit has routinely identified three categories of damages for emotional distress: (1) garden variety; (2) significant; and (3) egregious. *E.g. Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. App'x 536, 546 (2d Cir. 2020) (summary order). "Garden-variety" claims are those in which "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms." *Ravina*, 2019 WL 1450449, at *11.  Recent decisions describe such claims as "generally merit[ing] $30,000 to $125,000 awards." *Id.* (citing *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 321-22 (S.D.N.Y. 2018) (granting a remittitur of a compensatory damages award

---

[4]   *See* Macrotrends.net, "1-Year Treasury Rate – 54 Year Historical Chart," https://www.macrotrends.net/2492/1-year-treasury-rate-yield-chart#:~:text=The%20current%201%20year%20treasury,19%2C%202020%20is%200.11%25 (*last accessed* Dec. 1, 2020).

from \$624,000 to \$125,000 where the "[p]laintiff's vague and subjective complaints of insomnia, lower self-esteem, depression, anxiety, and stomach aches and headaches—unsupported by medical corroboration—establish[ed] no more than 'garden-variety' emotional distress")); *Legg v. Ulster Cnty.*, 2017 WL 3668777, at *11–12 (N.D.N.Y. Aug. 24, 2017) (granting a remittitur of a compensatory damages award from \$200,000 to \$75,000 where the plaintiff "produced only vague testimony regarding her alleged emotional distress" and "there was no testimony from a medical professional").

"Significant" emotional distress claims "are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses." *Ravina*, 2019 WL 1450449, at *11–12. (citing *Emamian v. Rockefeller Univ.*, 2018 WL 2849700, at *16 (S.D.N.Y. June 8, 2018)); *Duarte*, 341 F. Supp. 3d at 320). These "significant" claims typically support damages awards ranging from \$50,000 to \$200,000, though greater awards may be appropriate under some circumstances. *Id.* (citing, *e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 177-180 (2d Cir. 2012)) (upholding "significant" compensatory damages award of \$250,000 for reputational harm and emotional distress where evidence included evidence of medical treatment, as well as testimony from the plaintiff and her mother that she suffered from "tension headaches, abdominal pain, insomnia, anxiety, and depression"); *Emamian*, 2018 WL 2849700, at *17 (granting a remittitur of an emotional distress award from \$2,000,000 to \$200,000 under the NYCHRL where evidence consisted of "[p]laintiff's own testimony regarding her mental state, her trichotillomania and physical manifestations of her emotional suffering," as well as "corroborative medical testimony"); *Gutierrez*, 2018 WL 3432786, at *10 (awarding \$130,000 in emotional distress damages under the New York State Human Rights Law and the NYCHRL

where plaintiff testified that she "cried at work, had migraine headaches, routinely felt nauseous, vomited, had trouble sleeping, suffered from stress and anxiety, overate, and felt a general sensation of helplessness"); *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 328–34 (S.D.N.Y. 2016) (granting a remittitur of a $500,000 compensatory damages award on a sexual harassment claim under the NYCHRL to $150,000, where there was evidence of "significant" sexual harassment, but the evidence of emotional distress was limited to plaintiff's testimony).

Finally, "egregious emotional distress claims generally involve either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff." *Ravina*, 2019 WL 1450449, at *12 (citing *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 559 (S.D.N.Y. 2012)) (internal quotations omitted). Awards for "egregious" claims "can far exceed $200,000, with awards of over $1 million reserved for the most egregious cases." *Id.* (citing, *e.g.*, *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 163 (2d Cir. 2014) (upholding an award of $1.32 million in compensatory damages for a "unique" case under Title VII, the New York State Human Rights Law, and a common law tort claim for intentional infliction of emotional distress, involving "extreme racial harassment in the workplace," while "acknowledg[ing] that the jury's compensatory award tests the boundaries of proportionality and predictability")); *see also Angulo v. 36th Street Hospitality, LLC*, 2020 WL 4938188, at *3 (S.D.N.Y. July 31. 2020) (on a default judgment, awarding compensatory damages of $498,047.55 in egregious NYCHRL case involving sexual assault of plaintiff); *Offei v. Omar*, 2012 WL 2086294, at *5 (S.D.N.Y. May 18, 2012) (collecting cases analyzing awards for varying degrees of sexual assault victims under various statutes, ranging from $200,000 in 1996 under the New York State Human Rights Law for "repeated lewd acts by employees' supervisor, including self-exposure, forced kissing, grabbing of breasts, rubbing and objectionable comments," up to $1,250,000 in compensatory damages

20

under Violence Against Women Act and later two Connecticut state court torts for four-time rape victim plaintiff).

Here, an award of "egregious" emotional harm damages in the amount of $1,000,000 is appropriate.  While Plaintiff spares the Court the gruesome details of Plaintiff's allegations - - described extensively in Plaintiff's complaint - - to summarize: Defendant Barkats twice sexually assaulted Plaintiff in the workplace - - once as a condition for her to obtain her job, and a second time on her first day of work to demonstrate what would continue to be expected of Plaintiff if she wanted to keep her job. *See* ECF # 1, ¶¶ 17-30.  This physical assault was followed by years of harassment and mental trauma at Barkats's hands - - carried out through text messages and social media posts and continuing to as recently as February 3, 2020, when Barkats texted Plaintiff stating "[w]hy ignore me.  You know very well you will get nothing until the truth comes out.  So contact me and see how rewarding the truth can be." *See* Villalta Decl., ¶ 15, Exhibit B.  Plaintiff treated with a therapist, who confirmed that she suffered from paranoia, anxiety, depression, and alcoholic episodes when attempting to cope with Barkats's assault and abuse. *See* Urban Decl., ¶ 4, Exhibit A at 1, 2, 4.  Plaintiff sadly even resorted to self-harm, thrice cutting herself, and experienced suicidal ideations after feeling as though all hope was lost. Villalta Decl., ¶¶ 17-20.  Plaintiff even surgically altered her appearance in attempting to mentally recover and repair her self-worth when feeling at her lowest points, trying anything that she could to get over the ongoing emotional pain and suffering that she endured through Barkats's assault and ongoing post-employment harassment. Villalta Decl., ¶ 10.

A $1,000,000 emotional distress award for Plaintiff in the face of Defendants' years-long harassment following two sexual assaults is reasonable and appropriate given the "outrageous or shocking discriminatory conduct [and] significant impact on the physical health of the plaintiff."

*Ravina*, 2019 WL 1450449, at *12.  Indeed, Plaintiff's experience here is more severe than the plaintiff in *Ravina*.  There, Judge Abrams granted remittitur of a $750,000 compensatory damages award down to $500,000 where the plaintiff suffered "significant" but not "egregious" sexual harassment. 2019 WL 1450449, at *13-14.[5]  There, the plaintiff - - a research professor at Columbia University - - complained of gender discrimination and sexual harassment by her tenured supervising professor over the course of three years, featuring the following allegations wherein Defendant:

- "passed his hand on [her] back and went down toward [her] butt";

- talked to plaintiff about his sex life, sending her songs and playing music for her, and asking her for compliments;

- "told [Plaintiff] that [her] walk was sexy," walked her home after a dinner and tried to kiss her, held her hand at a restaurant, and once stared at her breasts while they were working together in his office;

- told Plaintiff that "[i]f you were nicer to [me], your papers would move faster," to which Plaintiff replied that "[she] was already as nice as [she] could be";

- refused to share her draft as a co-author, which was "unheard of" in the academic community and that he "was not even participating in the work anymore";

- accused plaintiff of being "insane," "crazy," and having "a masochistic desire to shoot [herself] in the foot," but plaintiff never explicitly told defendant that she felt he was harassing her because she "didn't want to offend him," ultimately complaining to University administration in May of 2014, leading to defendant becoming "aggressive and abusive," with defendant undergoing a "drastic change" one month thereafter, telling Plaintiff that her work was wrong and that she needed to complete "busy work," which in her view was not "important and integral to the paper";

2019 WL 1450449, at *2-4.

---

[5] Of course, emotional distress awards should be adjusted to account for inflation, *see DiSorbo v. Hoy*, 343 F.3d 172, 185 (2d Cir. 2003) (explaining the role of inflation in remittitur analysis), so this award in present dollars is actually $512,167.49. *See* United States Dep't of Labor, "Inflation Calculator," http://www.bls.gov/data/inflation_calculator.htm (*last accessed* Dec. 1, 2020).

Here, while Plaintiff only worked for Defendants for a mere two days, her harassment at Barkats's hands was as bad as can be imagined during those days and remains ongoing now more than six years later - - - nearly three years longer than the plaintiff in *Ravina* - - as she received text messages as recently as November 2019, whereby Barkats threatened to release a revenge porn film depicting Plaintiff unless she agreed to his offer to purchase her testimony in this matter, and to testify against her own lawyers in a hypothetical future matter against Plaintiff's counsel's law firm, and again texted Plaintiff as recently as February 2020, when Barkats bribed her a second time, again attempting to purchase her testimony. *See* Villalta Decl., ¶ 15; *see also* ECF # 93 at 1-2 (citing ECF # 90 at 3); ECF # 87-2 (email from Barkats's counsel to Plaintiff's counsel expressly offering to purchase Plaintiff's perjured testimony); ECF # 87-3 (Nov. 13, 2019 text message from Barkats to Plaintiff describing revenge porn film threat and perjury solicitation).  Plaintiff's harm suffered drastically outweighs that proven at trial in *Ravina*, and is instead more comparable - - and in Plaintiff's view, indeed more severe - - to the emotional harm suffered by the plaintiff in *Turley*.  In *Turley*, the plaintiff suffered three-years of egregious racial discrimination in the workplace, including racial slurs, displays of a "stuffed monkey hanging from a noose," and ridicule when raising complaints about this harassment, leading to anxiety, depression, and hospitalization. 774 F.3d at 144-51 (awarding emotional harm damages of $1,320,000).  Plaintiff's harm suffered here - - including physical violence through sexual assault and threats of further physical harm and reputational harm - - is arguable even worse than the *Turley* plaintiff had suffered, warranting the $1,000,000 award sought here.

As a result, Plaintiff's requested compensatory damages award of $1,000,000 is appropriate and reasonable in light of the instant Defendants' "outrageous or shocking

discriminatory conduct." *Ravina*, 2019 WL 1450449, at *12 (citing *MacMillan*, 873 F. Supp. 2d at 560).

### C.     Plaintiff is Entitled to an Award of Punitive Damages.

"Punitive damages are a discretionary moral judgment that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Garcia*, 2019 WL 8274296, at *8–9 (citing *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d Cir. 2015)) (internal quotation marks omitted).  Capped punitive damages are available under Title VII, while the NYCHRL allows for uncapped punitive damages. *See* 42 U.S.C. § 1981a(b)(1); N.Y.C. Admin. Code § 8-502(a).  Under Title VII, a plaintiff may recover punitive damages if she demonstrates that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).  "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Garcia*, 2019 WL 8274296, at *9 (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).  The employer's state of mind may be "inferred from the circumstances," *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *2 (E.D.N.Y. May 11, 2010), *aff'd*, 419 Fed. App'x 102 (2d Cir. 2011), and "egregious or outrageous acts may serve as evidence supporting an inference" of the employer's motive or intent. *Garcia*, 2019 WL 8274296, at *9 (citing *Kolstad*, 527 U.S. at 538).

"[T]he standard for determining damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Garcia*, 2019 WL 8274296, at *9 (quoting *Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir. 2018) (relying on certified question resolved in *Chauca v. Abraham*, 30 N.Y.3d 325, 331 (2017)).  "This standard

requires 'a lower degree of culpability' than is required for punitive damages under other statutes, as it 'requires neither a showing of malice nor awareness of the violation of a protected right.'" *Id.* (quoting *Kreisler v. Humane Soc'y of New York*, 2018 WL 4778914, at *9 (S.D.N.Y. Oct. 3, 2018)). Moreover, as described above, "[t]he NYCHRL permits punitive damages *without limitation* on the maximum amount." *Ravina*, 2019 WL 1450449, at *14 (citing *Syrnik v. Polones Constr. Corp.*, 918 F. Supp. 2d 262, 265 (S.D.N.Y. 2013)) (emphasis added). "Punitive damages are intended not only to punish the tortfeasor but also to deter future reprehensible conduct." *Id.* (citing *Chauca*, 30 N.Y.3d at 331).

In reviewing an award of punitive damages for excessiveness, courts consider "three guideposts" established by the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996) [hereinafter "*Gore*"]: "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages, and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (citing *Gore*, 517 U.S. at 573). Courts also review the punitive damages awards in similar cases in order to gauge whether a particular punitive award is excessive. *See, e.g., Payne v. Jones*, 711 F.3d 85, 104 (2d Cir. 2013); *Rosas v. Baiter Sales Co. Inc.*, 2018 WL 3199253, at *10 (S.D.N.Y. June 29, 2018).

As Judge Abrams has explained, "the degree of reprehensibility is particularly important and useful because punitive damages are intended to punish, and the severity of punishment . . . should vary with the degree of reprehensibility of the conduct[.]" *Ravina*, 2019 WL 1450449, at *14 (citing *Payne*, 711 F.3d at 100.) "In assessing the reprehensibility of a defendant's conduct, the Supreme Court has instructed that courts should 'consider whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or reckless

disregard of the health and safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.'" *Thomas v. iStar Fin. Inc.*, 652 F.3d 141, 148 (2d Cir. 2011) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)).

In *Ravina*, the jury found the individual defendant liable for retaliation, but not discrimination, noting that "while that defendant's conduct was not violent, did not threaten violence, and did not evince a reckless disregard for the safety of others, the jury reasonably could have found that his retaliatory conduct involved repeated actions, rather than an isolated incident, and that he acted out of malice, rather than mere accident.  Under the circumstances, the Court concludes that [the individual defendant's] conduct 'can be described as reprehensible, though it does not fall at the extreme end of the reprehensibility spectrum.'" *Ravina*, 2019 WL 1450449, at *14 (quoting *Quinby v. WestLB AG*, 2008 WL 3826695, at *4 (S.D.N.Y. Aug. 15, 2008)).

Here, Barkats's depraved conduct warrants the maximum constitutionally allowable punitive damages award based on his repeated sexual assault and wanton harassment not only against Plaintiff, but as set forth in the attached affidavits of two former employees, against other women who have worked for him. *See generally* Shivecharan Aff., ¶¶ 3-11 (describing Barkats's near-identical sexual assault as that suffered by Plaintiff); Spinelli Aff., ¶¶ 8-16 (describing Barkats's abusive workplace behavior belittling and screaming at female staff, and causing several women to break down crying and quit within a one-month span).  And Barkats's depraved behavior has continued through as recently as November 2019 and again in February 2020, when he continued to send text messages to Plaintiff while hiding out in another country as a self-professed fugitive of the United States, threatening to further retaliate against Plaintiff for her ongoing efforts to bring him to justice. *See* Villalta Decl., ¶ 4; *see also Lewis Family Group Fund, LP, et al. vs. JS*

26

*Barkats PLLC*, Dkt. No. 1:16-cv-05255-AJN-JLC (S.D.N.Y.), ECF # 202 at 3 (describing Barkats as "being a fugitive from the law" from "his overseas hideout" and is "on the lam" while evading New York County grand jury indictment for grand larceny).  Indeed, Plaintiff came to Barkats as a financially vulnerable young woman, willing to accept a $30,000 annual salary despite being subjected to sexual assault during her job interview. Villalta Decl., ¶ 4.  Barkats's conduct was plainly violent, intentional, and far from an isolated incident.

Judge Nathan in the *Lewis Family Group Fund* matter has also recognized the need for punishment against the instant Defendants (also defendants there), and granted default judgment against the same Defendants relying specifically on Judge Abrams's Order adopting this Court's R&R. 1:16-cv-05255-AJN-JLC (S.D.N.Y.), ECF # 267, Order Granting Default Judgment (July 21, 2020) (citing Judge Abrams's July 17, 2020 default judgment Order issued herein as justification for same).  But beyond Defendants' conduct in that matter, however, at least three other individuals have contacted Plaintiff's counsel in this matter and requested that their names remain out of the public record for various reasons.  One such individual is another New York attorney - - who contacted Plaintiff's counsel for the first time on September 29, 2020 - - and who shared that his client is engaged in a pre-litigation dispute with another entity, represented by none other than Defendant Barkats himself in his capacity as an attorney.  This is despite the fact that Barkats remains a fugitive in hiding outside of the United States.  What is more, through that discussion, Plaintiff's counsel has learned that Barkats is currently seeking admission to the bar of Paris, France, as he was recently scheduled to sit for the entrance exam to that jurisdiction. *See* Minkoff Decl., ¶ 3.  Thus, a strong punitive damages award is even more appropriate to deter Barkats, who seeks to become an attorney in France, where he will then have the opportunity to terrorize other young women there who may come into his employ.

Moreover, reading the tea leaves about where this matter might be headed after judgment is entered, Plaintiff specifically requests that the Court make an express finding that Barkats's conduct in sexually harassing Plaintiff was willful, and that his conduct constituted a malicious injury causing personal injury to Plaintiff - - not only because it would definitively establish Plaintiff's right to punitive damages under the NYCHRL, *Garcia*, 2019 WL 8274296, at *9 (citing *Kreisler*, 2018 WL 4778914, at *9), but also because it will streamline Barkats's almost inevitable future bankruptcy case and the adversary proceeding that Plaintiff will be forced to file in that forum. *See* 11 U.S.C. § 1328(a)(4) (exempting from discharge any debt "for restitution, or damages, awarded in a civil action against the debtor as a result of willful **or** malicious injury by the debtor that caused personal injury to an individual"); *see also In re Deluty*, 540 B.R. 41, 52-53 (Bankr. E.D.N.Y. 2015) (on a summary judgment motion in an adversary proceeding, granting judgment-creditor's summary judgment motion and finding state court judgment against the debtor entered in a sexual harassment case under the NYCHRL to be non-dischargeable under the Bankruptcy Code based on the state court's express finding of both willfulness and maliciousness in awarding punitive damages to the judgment-creditor in that underlying case).

Here, Plaintiff seeks a 2:1 ratio of punitive to compensatory damages - - limited only to Plaintiff's emotional harm damages (i.e., not including her economic damages) - - for a total punitive damages award of $2,000,000.   As the *Turley* court explained, "in the aggravated circumstances of this case, an approximate 2:1 ratio is both permissible under the Constitution and consistent with the established policies adopted and adhered to by this Court." 774 F.3d at 167 (citing *Gore*, 517 U.S. at 575) (explaining that reprehensibility is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award"); *Thomas*, 652 F.3d at 149–50 (*per curiam*) (affirming a remittitur requiring an approximately 1.5:1 ratio in light of "the moderate

level of reprehensibility of [the defendant's] conduct").  Given Defendants' ongoing reprehensible conduct - - threatening Plaintiff more than five years after Barkats assaulted her while fleeing criminal punishment for grand larceny in New York - - a 2:1 ratio is highly reasonable here.

### D.    Plaintiff is Entitled to an Award of Reasonable Attorneys' Fees and Costs.

A plaintiff prevailing in a Title VII suit is entitled to recover reasonable attorneys' fees and costs. 42 U.S.C. § 2000e–5(k).  Attorneys' fees and costs are also available under the NYCHRL. N.Y.C. Admin. Code § 8–502(f).  Because the "Title VII and NYCHRL provisions are substantively and textually similar . . . the reasonableness of fees [are] analyzed the same regardless of which provision provides [plaintiff's] recovery." *Miller-Rivera v. Eddie Jr.'s Sports Lounge, Inc.*, 2018 WL 3581735, at *4 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 3581698 (E.D.N.Y. July 25, 2018) (citing *Moore v. Houlihan's Rest., Inc.*, 2011 WL 2470023, at *7 n.10 (E.D.N.Y. May 10, 2011)).

### i.    *Plaintiff is a Prevailing Party.*

A plaintiff is the prevailing party "if [she] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A plaintiff qualifies as a prevailing party by demonstrating a change in the legal relationship between herself and defendants arising from the resolution of the lawsuit. *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989).  A plaintiff awarded judgment by default is similarly deemed "prevailing" and therefore entitled to an award of reasonable attorneys' fees and costs. *Miller-Rivera*, 2018 WL 3581735, at *4; *see also Shariff v. Alsaydi*, 2013 WL 4432218, at *4 (E.D.N.Y. Aug 15, 2013) ("Having obtained a default judgment against defendants, plaintiff is a prevailing party eligible to recover attorney's fees and costs.").

29

Here, Plaintiff, upon entry of default, is clearly the prevailing party, having thus altered the legal relationship between herself and Defendants.  Accordingly, Plaintiff is entitled to recover her reasonable attorneys' fees and costs incurred in connection with this lawsuit.

### ii.         *The Lodestar is the Proper Method to Calculate Attorneys' Fees.*

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours spent towards the litigation multiplied by a reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007).  The Second Circuit has held that "the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)); *see also Stanczyk v. City of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014) (reaffirming *Millea*).  To arrive at a lodestar calculation, "[t]he party seeking an award of attorneys' fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. 424 (1983).

### a.         *Proposed Hourly Rates Claimed.*

Court assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits. *Polk v. New York State Dep't of Corr. Serv's.*, 722 F.2d 23, 25 (2d Cir. 1983).  To determine the prevailing market rate, "[t]he rates used by the court should be current rather than historic hourly rates." *Reiter v. Metro. Transp. Auth. of N.Y.*, 457 F.3d 224, 232 (2d Cir. 2006).  Additionally, "courts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted." *Wong v. Hunda Glass Corp.*, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010).  Furthermore, "the range of rates that a plaintiff's counsel actually charges their clients . . . is obviously strong evidence of what the market will bear." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County of Orange*, 910 F.Supp. 945, 949

(S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate.").

In this case, the hourly rates that Plaintiff seeks to recover - - $400 for the Firm's managing and named partner, Michael J. Borrelli; $350 for the Firm's partner, Alexander T. Coleman; $295 for the Firm's senior associate, Michael R. Minkoff; between $250 and $200 for the Firm's prior senior and junior associates handling the matter over the course of the litigation - - Todd Dickerson, Kenneth St. John, and Pooja Bhutani; and $100 for the Firm's paralegals - - are all rates well within those that courts in this District and the neighboring Eastern District of New York have awarded for these individuals in similar employment cases.[6] *See, e.g., Tejada v. La Selecta Bakery, Inc.*, 17-cv-05882-EK-RER, Dkt. No. 50 (Mem. & Order adopting Rep. & Rec. Granting Default Judgment) (E.D.N.Y. Nov. 25, 2020) (on a default motion, on which fees were sought pursuant to the lodestar method, noting rates between $200 and $400 for B&A attorneys "fall within the range typically approved by this Court . . . [and] find[ing] the requested hourly rates to be reasonable"); *Salto v. Alberto's Constr., LLC*, 2020 WL 4383674, at *7 (S.D.N.Y. July 31, 2020) (citing *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015)) (on a contested motion to enforce a settlement agreement and for an award of attorneys' fees incurred with same, specifically approving B&A's requested hourly rates of $350 for Alexander T. Coleman, Esq., partner, and $295 per hour for lead associate litigating case, and noting same "are reasonable."); *In re Murray ex rel. Pryor v. Ambassador Coll. Bookstores, Inc.*, Case No. 2:18-cv-01388-AKT, ECF # 45

---

[6] The qualifications of each individual for whom such rates are sought, as well as the roles played by each in this case, are addressed in detail in the Minkoff Declaration at ¶¶ 8-41.

Moreover, Plaintiff notes that this Court recently entered judgment in the matter of *Nolasco v. Miranda Int'l, Inc.*, Dkt. No. 1:17-cv-01925-RWL, ECF # 42 (Nov. 30, 2020), approving, on a motion to enforce a settlement agreement and enter judgment in accordance with its terms, this Firm's requested attorneys' fees based on the same rates requested for approval herein.

(E.D.N.Y. Dec. 13, 2019) (on a *Cheeks* motion submitted on consent, finding that "[t]he thorough and well-reasoned presentation of counsel with regard to the fairness and reasonableness assessment is persuasive. . . [t]he Court . . . finds that . . . [t]he hourly rates in this case . . . fall within the range of reasonable rates within the Eastern District of New York."); *Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *see also Sealock v. Covance, Inc.*, 17-cv-05857-JMF, Dkt. No. 283 (S.D.N.Y. Mar. 13, 2020) (on consent motion for final approval of class action settlement, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates requested here); *Copper v. Cavalry Staffing, LLC et al.*, No. 14-cv-3676, Dkt. No. 255 (E.D.N.Y. Feb. 12, 2018) (approving rates of $400 per hour for Michael J. Borrelli, $350 per hour for Alexander T. Coleman, $295 per hour for lead associate attorney, and $90 per hour for the Firm's paralegals); *Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (S.D.N.Y. Feb. 9, 2018) (approving rates of $400 per hour for Michael J. Borrelli, $350 per hour for Alexander T. Coleman, $295 per hour for lead associate attorney, and $90 per hour for the Firm's paralegals). Additionally, these proposed rates are less than the fees that Plaintiff's Counsel typically commands from its clients. *See* Minkoff Decl., ¶¶ 16-17, 22-23, 28-29, 32, 35-36, 36, 41. These rates are also reasonably comparable to those charged by lawyers of like skill, experience, and reputation practicing in the Southern and Eastern Districts of New York, the supporting affidavits of whom - - attesting to the rates that those lawyers commanded in 2013 - - are provided with the

supporting Minkoff declaration. *See* Minkoff Decl., ¶ 42.  Accordingly, Plaintiff respectfully requests that the above rates be used in calculating the lodestar total.

b.    <u>Total Hours Spent</u>

In determining the hours that were reasonably spent, "the Court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *See Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger*, 160 F.3d at 876.

To demonstrate an entitlement to attorneys' fees, a party must submit "contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed." *Morin v. Modern Cont'l Constr. Co.*, 2009 WL 2551802, at *4 (E.D.N.Y. July 2, 2009).  Courts have consistently acknowledged, however, that there is no requirement that the party seeking attorneys' fees present extensive documentation "record[ing] in great detail how each minute of his time was expended." *Putnam Leasing Co. v. Fields*, 2007 WL 2230160, at *4 (E.D.N.Y. June 27, 2007) (quoting *Hensley*, 461 U.S. at 437 n. 12).  Rather, the time records provided by the prevailing party need only provide sufficient detail to permit the court to accurately determine the reasonableness of the attorneys' fee application. *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752, at *4 (S.D.N.Y. Oct. 17, 2008).

Moreover, a prevailing party can recover fees for several categories of work, including pre-litigation work, discussion of settlement, and even time spent on unsuccessful motions or motions

33

that were never filed. *See Gortat v. Capala Brothers, Inc.*, 621 Fed. Appx. 19, 23 (2d Cir. 2015) ("[T]here is no rule that [p]laintiffs need achieve total victory on every motion in pursuit of a successful claim in order to be compensated for the full number of hours spent litigating that claim."); *Ni v. Bat-Yam Food Servs. Inc.*, 2016 WL 369681, at *8 (S.D.N.Y. Jan. 27, 2016) (awarding attorneys' fees for hours spent on discovery, discovery-related motions, failed settlement negotiations, and summary judgment motions); *Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill, Improvement and Safety Funds v. WJL Equities Corp.*, 2015 WL 6965146, at *4 (E.D.N.Y. Nov. 10, 2015) (granting requested fees for discovery exchange, pleadings, pursuing settlement, and summary judgment motion practice); *Easterly v. Tri-Star Transp. Corp.*, 2015 WL 337565, at *10 (S.D.N.Y. Jan. 23, 2015) (approving fees for time spent preparing pleadings prior to the commencement of the action, discovery, discovery disputes, summary judgment motions, and a damages inquest); *King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 168 (E.D.N.Y. 2004) (finding time spent meeting with a client, speaking to witnesses, conducting and reviewing depositions, speaking with opposing counsel, analyzing discovery, calculating damages, drafting motions, and making court appearances "squarely in line with what would be reasonably necessary to litigate" any lawsuit). Courts have also specifically acknowledged that recoverable time includes pre-suit work arising out of demands and agency filings necessary to exhaust a plaintiff's administrative remedies. *See, e.g., Lewis v. Roosevelt Island Op. Corp.*, 2018 WL 4666070, at *7 (S.D.N.Y. Sept. 28, 2018) (collecting cases and awarding fees for, *inter alia*, pre-suit work arising out of Equal Employment Opportunity Commission and Freedom of Information Law requests).

Here, Plaintiff submits detailed records of the time worked on the instant action, including time spent over the course of this nearly six-year-long case. *See* Minkoff Decl. at ¶¶ 5-7, *id.* Exhibit

3.  These records reflect that Plaintiff's attorneys worked an approximate total of 534.1 hours as of the date of submission of this application.  The Court is well-familiar with the extraordinarily litigation-heavy nature of this action, which included, *inter alia*:

- Pre-litigation work, via both a pre-suit demand letter and a United States Equal Employment Opportunity Commission filing wherein Plaintiff exhausted her administrative remedies before filing the instant action;

- Defendants insisting on a stay pending arbitration, only to refuse to pay the arbitration fees and be defaulted and permanently banned from using the American Arbitration Association's services in the future, which itself resulted in default motion practice;

- Plaintiff filing a motion to lift the arbitration stay following default, which Judge Abrams granted, followed by Defendants filing a motion for reconsideration of the same, which Judge Abrams denied, followed by Defendants filing a notice of appeal of both of those decisions in the Second Circuit, which Defendants never perfected and that court dismissed, all the while Defendants filed a motion to stay this matter pending appeal, which this Court denied;

- Defendants then refusing to participate in discovery, which lead to Plaintiff's two motions to compel - - the first for documents, the second for Barkats's deposition - - both of which this Court granted, and after which - - when Defendants refused to comply with the Court's deadline for producing Barkats for his in-person deposition as he was a self-described fugitive who fled the jurisdiction - - this Court issuing a report and recommendation to Judge Abrams recommending entry of judgment by default, Defendants then objecting to that report and recommendation, with Plaintiff opposing Defendants' objections, and with Judge Abrams overruling their objections and adopting this Court's report and recommendation in its entirety; and

- Finally, the instant filing.

*See generally,* ECF #s 16-33 (motion to lift stay, with decision), ECF #s 34-43 (motion for reconsideration, with decision), ECF #s 46-53 (motion to stay pending appeal, with decision), ECF # 59 (mandate from Second Circuit dismissing appeal), ECF #s 78-86 (Plaintiff's two motions to

compel, with decisions), ECF #s 87-90 (motion for entry of default, with report and recommendation), ECF #s 91-95 (objections to report and recommendation, with decision and order directing instant filing).

These hours, broken down by each individual and supported by contemporaneous documentation, were all hours reasonably necessary towards the litigation of Plaintiff's successful claims.   However, Plaintiff's counsel has exercised billing judgment to reduce the requested lodestar fee by 97.5 hours, which is noted on Exhibit 3 as entries listed as "NO CHARGE" records.[7] *See* Minkoff Decl., ¶ 6, *id.* Ex 3.   Accordingly, Plaintiff seeks recovery for all hours reasonably worked on the instant action after exercising billing judgment, or 436.6 hours.   And because Defendants' "aggressive litigation tactics extended the length and breadth" of the motion practice and discovery in this case, as detailed above and of which this Court is well aware, Plaintiff submits that the amount of time worked on this matter is reasonable. *See, e.g., 28th Highline Assocs., LLC v. Roche*, 2019 WL 10632851, at *5 (S.D.N.Y. July 29, 2019), *report and recommendation adopted*, 2020 WL 5659465 (S.D.N.Y. Sept. 23, 2020) (citing *Therapy Prod., Inc. v. Bissoon*, 2010 WL 2404317, at *6 (S.D.N.Y. Mar. 31, 2010)) (noting extensive hours expended were reasonable "in light of losing party's actions and that prevailing party would have been saved the costs of disproving a factual assertion and theory of liability if losing party had been forthcoming in conceding facts. . . ."); *see also Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 2011 WL 1002439, at *7 (S.D.N.Y. Mar. 16, 2011) (granting fee request as sanctions and noting

---

[7] Plaintiff's counsel has "NO CHARGED" various entries such as all ECF bounces generated by Plaintiff's counsel's own filings, all ECF bounces other than a single attorney reviewer for all other filings, duplicative billing by multiple attorneys on the file, and various internal correspondence between Plaintiff's counsel, as well as time spent reviewing the Plaintiff's counsel's contemporaneous billing records and time reduction for various tasks throughout the course of this matter.

"it was [defendant's] improper conduct [ ] that presented the legal complexity and the need for swift action, and that led to the expenditure of time by [plaintiff's] counsel.").

*c.*   <u>*Calculation of the Presumptively Reasonable Fee*</u>

Multiplying the total hours expended by the hourly rates requested, in accordance with the contemporaneous billing records attached to the Minkoff Declaration as Exhibit 3, Plaintiff submits that the following fee, current through the date of this submission, is presumptively reasonable: $121,266.24.

***iii.***   <u>***Plaintiff is Entitled to an Award of Costs.***</u>

The "list of [] recoverable costs is obviously the list set out in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court." *Arlington Central Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 298 (2006).  This list of taxable costs includes: (1) fees of the clerk and marshal; (2) fees of a court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See* 28 U.S.C. § 1920.  Further, pursuant to Local Civil Rule 54.1, taxable costs such as the costs associated copying, docket fees, and other miscellaneous fees may also be recovered.

Plaintiff has submitted a "Statement of Costs," attached to the Minkoff Declaration, which includes postage, court filing fees, copying costs, PACER fees, service of process, mediation expenses, and legal research charges. Minkoff Decl., at ¶ 7, Exhibit 4.  Accordingly, Plaintiff respectfully requests that the judgment include reimbursement for Plaintiff's taxable and other discretionary costs in the amount of $2,312.34.

37

### iv.   _Plaintiff is Entitled to an Award of Post-Judgment Interest._

Post-judgment interest shall be imposed "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).  This interest rate is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment," and "shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually." _Antoine v. Brooklyn Maids 26, Inc._, 2020 WL 5752186, at *21 (E.D.N.Y. Sept. 26, 2020) (citing _id._, §§ 1961(a)-(b)). The amount upon which the post-judgment interest accrues "includes compensatory damages, punitive damages, and fee awards." _Koch v. Greenberg_, 14 F. Supp. 3d 247, 287 (S.D.N.Y. 2014) (citations omitted).  Plaintiff therefore respectfully requests that the Court award her post-judgment interest from the date of entry of judgment on all damages awarded herein.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, in the following amounts:

1.   Compensatory Damages:

- Economic Damages:

  Back pay: $49,071.65;

  Interest on lost wages: $3,441.16, plus $1.59 per day from the date of Plaintiff's submission through the date that the Court enters judgment;

- Emotional harm damages: $1,000,000;

6.   Punitive Damages: $2,000,000;

7. Attorney's Fees: $121,266.24;

8. Litigation Costs: $2,312.34;

9. Post-judgment interest: in an amount to be set by the clerk of the Court;

and, such other and further relief this Court deems just and proper.

Dated: December 2, 2020
New York, New York

Respectfully submitted,

By: _____

MICHAEL R. MINKOFF, ESQ. (MM 4787)
ALEXANDER T. COLEMAN, ESQ. (AC 1717)
MICHAEL J. BORRELLI, ESQ. (MB 8533)
BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel.: (212) 279-5000
Fax: (212) 279-5005